IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,            )
                                     )
            Plaintiff,               )            8:05CV100
                                     )
        v.                           )
                                     )
JENNIFER L. MEISNER, SCOTTS          )       MEMORANDUM AND ORDER
BLUFF COUNTY, Nebraska, STATE        )
OF NEBRASKA, Nebraska                )
Department Of Revenue, FIRST         )
NATIONAL BANK, FEDERAL               )
NATIONAL MORTGAGE                    )
ASSOCIATION, and NEBRASKA            )
DEPARTMENT OF REVENUE,               )
                                     )
            Defendants.              )
_____      )


     The plaintiff, the United States of America, has filed suit
against the defendant, Jennifer L. Meisner, for a judgment on
defendant's unpaid federal income tax liabilities and an order to
foreclose on defendant's residence to collect these taxes.
Filing 1, (plaintiff's complaint), ¶1.  This court previously
granted the government's motion for partial summary judgment with
respect to the outstanding balance of the tax assessments.
Filing 77.  The government now moves for a summary judgment
resolving the remainder of the case as a matter of law.[1]  Filing
86.

     The sole issue remaining in this lawsuit is whether the
United States is entitled to foreclose against defendant

_____

     [1]This case is pending before me for final resolution
pursuant to the parties' consent.  See filing 20, "Consent to
Exercise of Jurisdiction by a United States Magistrate Judge,"
and 28 U.S.C. § 636(c).

Meisner's residential property in Scotts Bluff County, Nebraska
to secure payment on the federal tax liabilities adjudged to be
owed.  Relying on Internal Revenue Manual (IRM) sections 5.17.4.1
through 5.17.4.9, defendant Meisner claims the IRS cannot
foreclose on her property because it failed to investigate and
exhaust other collection options before pursuing foreclosure.
She seeks an order from the court permitting her to depose
several IRS officers regarding their alleged failure to comply
with IRM requirements before filing a foreclosure action.  The
government has moved to quash these depositions, claiming the IRM
does not have the force and effect of law and confers no rights
on taxpayers, and further claiming defendant Meisner can raise no
equitable defenses to the government's foreclosure action.  The
government contends no material factual dispute exists, and it is
entitled to a judgment of foreclosure.

        For the reasons discussed below, I find the government is
entitled to judgment as a matter of law.


                        STATEMENT OF FACTS

        Defendant Meisner has a long history of litigation with the
IRS arising from her failure to pay state and federal income
taxes on royalty income she received and continues to receive
pursuant to a property settlement agreement.  As explained in
Meisner v. U.S., 133 F.3d 654, 656 (8th Cir. 1998), Jennifer
Meisner is the ex-wife of Randall Meisner, a former
singer/songwriter for The Eagles.  At the time of the Meisner
divorce, Randall Meisner owned royalty interests in certain music
licenses and copyrights.  The Meisners' property settlement
agreement awarded Jennifer Meisner a 40% royalty interest in

                                2

those licenses and copyrights.  She has received income from this royalty interest ever since.

Jennifer Meisner did not file income tax returns from 1987 to 1991.  See Matter of Meisner, 155 B.R. 519, 520 (D. Neb. 1993).  In 1992, when the IRS attempted to levy on federal tax liens placed on Ms. Meisner's royalty payments, she responded by filing for Chapter 13 bankruptcy protection.  Matter of Meisner, 155 B.R. at 520.  According to the findings of the bankruptcy court, after she filed her bankruptcy petition, Ms. Meisner received royalty income and deposited that income into her mother's checking account.  Her mother, in turn, used the money to pay off a mortgage.  Matter of Meisner, 155 B.R. at 520.  The bankruptcy court also found that although Ms. Meisner's royalty income ranged from $75,000 to $200,000 per year, her Chapter 13 reorganization plan proposed to pay the IRS less than it was entitled to and at a payment rate of less than $1,000.00 per month.  Based on these facts, the bankruptcy court held:

> The filing of the bankruptcy petition is solely referable to an attempt by the debtor to prevent the Internal Revenue Service from levying upon a tax lien. The tax liability arose from the debtor's failure to file income tax returns between 1987 and 1991. Considering all of these factors, I conclude that this Chapter 13 case was not filed in good faith and that it should be dismissed.

Matter of Meisner, 155 B.R. at 520-21.  Ms. Meisner did not appeal this ruling.

Jennifer Meisner filed a suit in this forum on October 31, 1995, (Meisner v. United states of America, 8:95-CV-00472), seeking a refund for taxes paid on royalty income she received during the 1987, 1988, 1990, and 1993 tax years.  She claimed the

3

royalty income was properly taxable to her ex-husband.  On December 11, 1996 a jury found that Randall Meisner had not exerted power or control over Ms. Meisner's rights in the royalty income, and therefore the income was properly taxable to Ms. Meisner.  Judgment was entered in favor of the government. Meisner v. United states of America, 8:95-CV-00472, filings 47 & 50.  Ms. Meisner appealed.  Meisner v. U.S., 133 F.3d 654, 656 (8th Cir. 1998).  The Eighth Circuit affirmed the judgment in favor of the government and held that Jennifer Meisner is responsible for any taxes owed on royalty income received from the 40% interest in the music licenses and copyrights awarded her under the Meisner property settlement agreement.  Id.

The IRS has continued to levy against Ms. Meisner's royalty income for the payment of delinquent income taxes.  In this lawsuit Jennifer Meisner claims the IRS has dealt with her unfairly in its efforts to collect on her ongoing federal tax liabilities.  Filing 89 (Meisner affidavit), ¶ 5.  On April 9, 2003 Ms. Meisner advised the government that her only source of income was royalty income and asked the government to permit her to keep enough money from the royalty payments to cover her ordinary living expenses.  Filing 89 (Meisner affidavit), ex. A. With the assistance of counsel, Ms. Meisner advised and verified to the government that her monthly living expenses totaled $7,898.00 per month.  Since royalty checks were received every six months, she asked to receive $47,388.00 (six months of living expenses) from every royalty check.  She also asked that the remainder of the levied amount be applied to her 2003 estimated tax liability rather than unpaid back taxes.  Filing 89 (Meisner affidavit), ex. B.  However, since the IRS' Notice of Levy on the royalty income did not state the levy was for payment of 2003 taxes, the IRS did not apply any amounts received toward

4

defendant Meisner's 2003 estimated taxes.  Filing 89 (Meisner affidavit), ex. C.

On March 24, 2004 the IRS issued another notice of levy on Ms. Meisner's royalty income.  Filing 89 (Meisner affidavit), ex. H.  On April 21, 2004 Defendant Meisner, acting through her counsel, contacted the Taxpayer Advocate Service (TAS) for assistance, (filing 89 (Meisner affidavit), ex. D)), and filed a "Request for a Collection Due Process Hearing" with the IRS. Filing 89 (Meisner affidavit), ex. G.  Ms. Meiner asserted that the IRS levies placed on the her royalty income in 2003 had left her with no funds to pay the 2003 estimated taxes on that income and insufficient funds ($2,833.00 per month) to live on.  Filing 89 (Meisner affidavit), ex. G.  Ms. Meisner's counsel argued:

> We believe that Ms. Meisner is being "punished" for her staunch criticism of the Internal Revenue Service in this matter.  This is being done to the extent that she has absolutely no money whatsoever and is constantly attempting to borrow and beg even to put scraps of food on her plate.  Ms. Meisner has been unable to eat properly, she has not received appropriate dental care, she is on medication for anger management and depression (4mg per day of Ativan and 20 mg per day of Lexapro).  She has no sheets on her bed, upon receipt of the most recent Notice of Levy, she lost nearly all control.  It has been over one year since she was able to pay for a meal in restaurant.  She finds it humiliating that her 21-year old granddaughter had to pay for a meal they shared recently at a fast-food restaurant.

Filing 89 (Meisner affidavit), ex. G.  Defendant Meisner's counsel further explained that Ms. Meisner's home is in disrepair, is no longer insurable, and due to past unpaid debts, she cannot hire contractors to perform repairs or provide materials or services for her home, and she cannot secure credit. Finally, defendant Meisner's counsel stated that Ms. Meisner has

5

significant unpaid bills for dental and mental health care, and she has frequently considered suicide as "the only way out" of her tax problems.  Filing 89 (Meisner affidavit), ex. G.

During the years 2000 through 2004 Jennifer Meisner received a total of $859,566 of royalty income from The Eagles, nearly $172,000 per year.  Filing 96, att. 2 (Meisner affidavit), ¶ 9. She is the sole owner of her residence located at 60056 Victory Hill Drive, Scottsbluff, Nebraska 69361, more specifically described as follows:

> All of that part of the Southeast Quarter of the Northeast Quarter (SE¼NE¼) of Section 34, Township 23 North, Range 55 West of the 6th P.M., in Scotts Bluff County, Nebraska, which lies North of the Government Lateral as now constructed.

Filing 87, att. 1 (House Declaration (Third)), ¶¶ 7-10 & exs. 2-5; filing 89, att. 1 (Meisner declaration), ¶ 1.  Ms. Meisner's home has five bedrooms, three baths, and 4928 square feet of floor area.  The tax assessed value of the home for 2003 was $186,339.  Filing 87, att 1 (House affidavit), ex. 8.  Defendant Meisner does not list a mortgage payment among her monthly living expenses.  See filing 89 (Meisner affidavit), ex. H (p. 40). Both the IRS and the State of Nebraska have placed tax liens on this property for unpaid income taxes.  No other third party has any interest in Ms. Meisner's residential property.

On June 21, 2004 William L. House, an IRS Revenue Officer in the Small Business/Self-Employed (SB/SE) Division located in North Platte, Nebraska, contacted the IRS Acting Director of Area 9 and recommended that a civil foreclosure suit be filed against Ms. Meisner to collect unpaid federal tax liabilities totaling $449,892.01.  Filing 87, att. 1 (House Declaration (Third)), ¶ 5 & ex. 2-5.

6

The IRS served a Notice of Federal Tax Lien on August 25, 2004 regarding income taxes owed by Ms. Meisner for the 2003 tax year.  Filing 89 (Meisner affidavit), ex. E.

On September 27, 2004 the TAS sent a letter to Ms. Meisner's counsel summarizing its efforts and successes in negotiating with the IRS on her behalf.  The TAS had received Ms. Meisner's request for assistance in April of 2004, and over the ensuing five months, had successfully negotiated for release of $61,042 from levy proceeds to relieve her economic hardship, with the expectation that the released proceeds would be used to pay basic living and medical expenses.  However, "this was not necessarily done."  Filing 89 (Meisner affidavit), ex. D.  The TAS had further negotiated a monthly living expense allocation of $4,718.00 per month, as well as the release of funds to pay Ms. Meisner's current federal and state estimated tax payments.  The TAS was not, however, able to meet Ms. Meisner's expectations with respect to reasonable monthly expenses.  Filing 89 (Meisner affidavit), ex. D.  It closed Ms. Meisner's file, having concluded that "the expenses allowed have been determined by TAS to be more than reasonable to relieve [Ms. Meisner's] economic hardships."  Filing 89 (Meisner affidavit), ex. D.

On September 29, 2004 Ms. Meisner filed a "Request for a Collection Due Process Hearing" objecting to the IRS' August 25, 2004 Notice of Federal Tax Lien.  Filing 89 (Meisner affidavit), ex. E.  The hearing request reiterated Ms. Meisner's belief that the IRS' wrongful conduct in 2003 had created her inability to pay 2003 estimated taxes.  Filing 89 (Meisner affidavit), ex. E.

7

Ms. Meisner filed a Collection Appeal Request for the March 24, 2004 Notice of Levy on September 30, 2004.  Filing 89 (Meisner affidavit), ex. H.  She argued, through her counsel, that her monthly living expenses exceeded $5000 per month.  She requested a monthly living expense allocation of $5598 per month, with $515.00 per month used to pay her past and continuing attorney fees.  She also requested that in addition to the levy amounts already released pursuant to negotiations between the TAS and the IRS, that $10,878 be released to pay her past debts, and more than $27,000 be released to pay her federal and state tax obligations for 2003.  Filing 89 (Meisner affidavit), ex. H.  Under Ms. Meisner's proposal, of the $113,233 amount levied on March 24, 2004, $15,644.11 would be available to pay tax liabilities owed for the 1991, 1992, 1994, 1995, and 1996 tax years.

On October 13, 2004 the IRS Appeals Office responded to  Ms. Meisner's Collection Appeal Request and advised her counsel to contact the IRS within thirty days to schedule a time to discuss the case.  Filing 89 (Meisner affidavit), ex. F.  That same day, Albert B. Kerkhove, the Associate Area Counsel of the Internal Revenue Service in Omaha, Nebraska, sent a letter authorizing and requesting the Attorney General of the United States of America (through his delegate, the Assistant Attorney General of the Tax Division of the U.S. Department of Justice) to file a civil foreclosure action against Jennifer Meisner to collect her unpaid federal tax assessments.  Filing 87, att. 2 (Carriger Declaration (Third)), ¶ 4 & ex. 1.

From November 2004 through November 2006 the defendant paid $164,626.85 in federal taxes.  Approximately $31,000 of these payments were credited toward delinquent tax liabilities.  Filing

8

89 (Meisner affidavit), ¶ 9.  From April 1, 2003 through January 2005 the IRS also levied on plaintiff's royalties and collected $192,136.70 toward payment of her past due federal tax liabilities.  Filing 89 (Meisner affidavit), ¶ 10.

The government filed its tax foreclosure action against defendant Meisner on March 4, 2005.  Filing 1.  Its complaint alleges that Jennifer Meisner owes unpaid federal income taxes and statutory additions to tax for  tax years 1991 through 1992, 1994 through 1997, and 2003.  However, the IRS has now abandoned its claims related to the 1997 and 2003 tax years.  Filing 83 (Government's Statement of Remaining Trial Issues), p.2, ¶ 1.

On January 24, 2007 the court granted partial summary judgment in favor of the government.  Filing 77.  The court held:

> [T]he government is entitled to a partial summary judgment in the amount of $374,448.43, together with all accrued but unassessed interest and penalties, plus all statutory additions to tax accruing pursuant to 26 U.S.C. §§ 6601, 6621 and 6622, and 28 U.S.C. § 1961(c), until paid, for the taxable periods ending on December 31, 1991, 1992, 1994, 1995, and 1996.

Filing 77 (Memorandum and Order), p. 20.  Accordingly, the only issue remaining in this lawsuit is whether the United States is entitled to foreclose on Ms. Meisner's home to collect all or a portion of her $374,448.43 adjudicated tax liability.

LEGAL ANALYSIS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); <u>Matsushita Elec. Ind. Co.</u>

9

v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences without assessing credibility.  Breeding v. Arthur J. Gallagher and Co., 164 F.3d 1151, 1156 (8th Cir. 1999).

The facts filed of record are undisputed.  Defendant Meisner contends, however, that this case is not ripe for adjudication on summary judgment because she has not yet deposed IRS employees "concerning the issue of whether the government, before initiating this foreclosure action on Defendant's principal residence, exhausted all administrative remedies including whether the government gave thorough consideration to alternative collection methods as part of its investigation into Defendant's principal residence as required by IRC § 6331(j)((2)(D) and in accordance with IRS policy and procedures set forth in the Internal Revenue Manual ("IRM")."  Filing 88 (Defendant's Brief on Remaining Issues of Law and Fact), p. 2.  She claims the court must consider such evidence in determining whether the government is entitled to foreclose on its tax lien.  The government has moved to quash these depositions.  Filing 68.

As previously determined:

> [A]ny ruling on the motion to quash will, by necessity, require the court to determine the legal issue of whether the government is obligated to exhaust alternative collection methods before initiating a tax foreclosure action.  If so, the defendant's proposed deposition questioning may be relevant; if not, such questioning is irrelevant, and the motion to quash should be granted.

Filing 85, p.2.  Having reviewed the parties' briefs and evidence on the government's pending motion for summary judgment, I now conclude that the issues defendant Meisner intends to pursue, and the facts she seeks to discover by deposing IRS employees, are not relevant to the final determination of this case.  I therefore conclude the government's motion to quash  should be granted.

Accordingly, the facts of this case are fully submitted and undisputed.  Final resolution of this case rests on determining the following issues of law:  1) whether the government can foreclose on a tax lien absent first proving it exhausted all other tax collection options in accordance with IRM sections 5.17.4.1 through 5.17.4.9; and 2) whether the government must show it investigated and exhausted alternative options for tax collection before pursuing foreclosure under 18 U.S.C. § 7403. Underlying both of these legal issues is defendant Meisner's claim that under the facts presented, the court should deny the government's request for an order of foreclosure on equitable grounds.

1.   <u>Rights Afforded Defendant Meisner under the IRM</u>.

IRM 5.17.4.7.1(1) states that the "statutory authority for bringing a suit to reduce tax claims to judgment is found in IRC sections 7401 and 7402(a)."  IRM 5.17.4.7 states:

> (1) As a general rule, the purpose of instituting a suit to reduce tax claims to judgment is to prevent the statute of limitations for collection from running where collection cannot be accomplished by administrative methods within the normal statutory period.

11

> (2) A suit in aid of collection of taxes will not
> usually be authorized unless all administrative
> remedies available have been exhausted or their use
> would prove ineffective.

IRM 5.17.4.7.[2]

Relying on IRM 5.17.4.7(2), defendant Meisner claims the government is not entitled to a judgment of foreclosure because several alternative collection methods were not pursued by the government or completed by the parties before the government's suit was filed.  Filing 95 (Meisner brief), p.12.  Meisner argues:

> Clearly, the taxpayer had not exhausted all of the
> administrative remedies available to her when the
> October 13, 2004 authorization letter went forward nor
> had the IRS.  As such, what motivated the IRS to
> authorize the Attorney General to initiate this
> foreclosure action?  Was there something out of the
> ordinary about the Defendant's circumstances that
> warranted disregard of the guidance in IRM § 5.17.4.7?
> Was there some reason for the IRS to view the use of
> the administrative remedies to be ineffective when the
> IRS was continuing to engage in the appeals process
> with the Defendant?

Filing 95 (Meisner brief), p.14.  Defendant Meisner claims these questions must be answered, that she must be allowed to depose IRS employees to obtain these answers, and that the existence of

---

[2]I note that the provisions of the IRM relied on by defendant Meisner were not offered as evidence.  Although it is arguably improper to take judicial notice of the internal manuals used by federal government agencies, (compare U.S. v. Judge, 846 F.2d 274 (5th Cir. 1988)(no judicial notice of DEA manual) with Wilson v. Commissioner of Internal Revenue, 77 T.C. 324, 326 (1981)(court took judicial notice of IRM provisions)), in the interest of resolving this case expeditiously, I take judicial notice the IRM provisions cited by the plaintiff.

these unanswered questions precludes entering a summary judgment
in favor of the government.

It is universally held that the IRM does not have the force
of law, does not confer rights on taxpayers, and is not binding
on the IRS in litigation with taxpayers.  Fargo v. C.I.R., 447
F.3d 706 (9th Cir. 2006); Qureshi v. U.S., 96 A.F.T.R.2d
2005-5949 (Fed. Cl. 2005); Carlson v. United States, 126 F.3d
915, 922 (7th Cir. 1997); Groder v. United States, 816 F.2d 139,
142 (4th Cir. 1987); United States v. Horne, 714 F.2d 206, 207
(1st Cir. 1983); United States v. Will, 671 F.2d 963, 967 (6th
Cir. 1982); In re Wood, 328 B.R. 880, 887-888 (Bankr. S.D. Fla.
2005); Cennamo v. United States, 147 B.R. 540, 543 (Bankr. C.D.
Cal. 1992).  See also Central Laborers' Pension Fund v. Heinz,
541 U.S. 739, 748 (2004)(holding that the government is also not
entitled to rely on either an IRM statement or any longstanding
agency practice that conflicts with regulations).  The provisions
of the IRM "only govern the internal affairs of the Internal
Revenue Service."  United States v. McKee, 192 F.3d 535, 540 (6th
Cir. 1999).  See also Oxford Capital Corp. v. United States, 211
F.3d 280, 285 n. 3 (5th Cir. 2000); Reid & Reid, Inc. v. U.S.,
366 F.Supp.2d 284, 288 (D. Md. 2005).  Accordingly, defendant
Meisner cannot prevail based on any claim that the government
failed to comply with the IRM.  She has no legal right to insist
that the government comply with this policy manual.

Moreover, even if IRM provisions are considered legally
binding on the IRS, and even assuming the IRS did not
sufficiently exhaust alternative methods for collecting from this
defendant, IRM 5.17.4.7(2) does not prohibit the IRS from
pursuing this judicial foreclosure action.  IRM 5.17.4.7(2)
states that "[a] suit in aid of collection of taxes will not

<u>usually</u> be authorized unless all administrative remedies available have been exhausted or their use would prove ineffective." IRM 5.17.4.7(2)(emphasis added). The obvious corollary to IRM 5.17.4.7(2) is that the IRS may and will sometimes choose to foreclose on IRS liens rather than attempt to collect delinquent taxes by other means. Simply stated, IRM 5.17.4.7(2) may provide intra-agency guidance, but it does not mandate the IRS to exhaust other administrative collection processes before filing an action to foreclose on tax liens.

> 2. <u>Rights Afforded Defendant Meisner under the IRC</u>.

The government's action is brought pursuant to § 7403 of the Internal Revenue Code ("IRC"), 26 U.S.C. § 7403. IRC § 7403(c) states:

> (a) Filing.--In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General . . . may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States . . . .
>
> . . .
>
> (c) Adjudication and decree.--The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States. . . .

14

26 U.S.C.A. § 7403(a) & (c).  Defendant Meisner argues that the
words "may decree" in § 7403(c) afford the court the discretion
to deny the government's claim for foreclosure unless it first
exhausts other available collection methods.  She claims that the
additional taxpayer protections enacted in IRC 6331(j) for IRS
levy procedures in 1998 should be considered by the court, in its
discretion, when ruling on lien foreclosure cases brought under
IRC 7403.  Defendant Meisner argues:

> The Court is presented with the government stating that
> it need not accord a taxpayer, in the context of a §
> 7403 foreclosure action, the same protections that the
> taxpayer otherwise would enjoy in the context of a
> levy.  Why should the IRS be able to circumvent the
> rights Congress bestowed on a taxpayer in a levy
> situation simply by choosing to proceed to foreclose on
> a lien in federal district court?  Is it permissible
> for the IRS effectively to "forum shop" when it does
> not follow statutory dictates in the context of a levy
> so it can argue to a federal court that the court has
> been removed of all discretion in a foreclosure action
> on a personal residence?  Defendant respectfully
> submits that the Court's discretion was bolstered by
> Congress' action in 1998 amending into the IRC new IRC
> § 6331(j) which codified the protections the IRS' own
> policies, embodied in the IRM, had granted to taxpayers
> for levies under IRC § 6335 and foreclosures under IRC
> § 7403.

Filing 95 (Meisner brief), pp.9-10.  The defendant's argument
lacks merit.

Defendant Meisner's argument is based on at least three
invalid assumptions:  1) tax levies and tax liens are, in
essence, the same thing; 2) the explicitly stated Congressional
amendments to statutory tax levy provisions are therefore, by
inference, likewise applicable or at least persuasive in tax lien
adjudications; and 3) based on the foregoing assumptions, this

15

court can expand its equitable discretion beyond the boundaries
set by longstanding court precedence.

Tax lien foreclosures and tax levies are separate mechanisms
used by the IRS to collect unpaid taxes from recalcitrant
taxpayers.  U.S. v. National Bank of Commerce, 472 U.S. 713, 719
(1985).  Both mechanisms begin with the IRS' assessment of due
and unpaid taxes.  26 U.S.C. § 6321.  Upon assessment and demand
for payment, a lien arises by operation of law "upon all property
and rights to property, whether real or personal," owned by the
delinquent taxpayer.  26 U.S.C. § 6321.  The lien continues until
the taxpayer's liability "is satisfied or becomes unenforceable
by reason of lapse of time."  26 U.S.C. § 6322; National Bank of
Commerce, 472 U.S. at 719.

A federal tax lien created pursuant to 26 U.S.C. § 6321 is
not self-executing.  The IRS must affirmatively purse collection
by either a lien foreclosure suit brought pursuant to IRC § 7403,
or by administrative levy made pursuant to IRC § § 6331.  These
methods are clearly distinguishable.

A lien foreclosure action requires all persons with liens
upon, or "claiming any interest in" the property to be joined as
parties.  26 U.S.C. § 7403(b).  The court is then able to fully
and finally determine all parties' rights to the property and
their priority interests in the property.  The lien foreclosure
procedure adjudicates any property interests that may compete
with the IRS' lien, and affords those claiming to hold a property
interest with a judicial forum and an opportunity to be heard
before the IRS forecloses on its lien.  If the federal government
is adjudged to have a superior interest in the property, it can
then proceed to execute on its judgment.

16

A tax levy under § 6331(a) is a "provisional remedy" and typically "does not require any judicial intervention." National Bank of Commerce, 472 U.S. at 719(citing United States v. Rodgers, 461 U.S. 677, 680-682 (1983). Section § 6331(b) permits collection of the tax by levy through "the power of distraint and seizure by any means."

> In contrast to the lien-foreclosure suit, the levy does not determine whether the Government's rights to the seized property are superior to those of other claimants; it, however, does protect the Government against diversion or loss while such claims are being resolved. "The underlying principle" justifying the administrative levy is "the need of the government promptly to secure its revenues." Phillips v. Commissioner, 283 U.S. 589, 596, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931). "Indeed, one may readily acknowledge that the existence of the levy power is an essential part of our self-assessment tax system," for it "enhances voluntary compliance in the collection of taxes." G.M. Leasing Corp. v. United States, 429 U.S. 338, 350, 97 S.Ct. 619, 627, 50 L.Ed.2d 530 (1977). "Among the advantages of administrative levy is that it is quick and relatively inexpensive." United States v. Rodgers, 461 U.S. at 699, 103 S.Ct. at 2145.

National Bank of Commerce, 472 U.S. at 721.

Unlike a lien foreclosure action, enforcement of a levy permits the government to take possession of property to which it ultimately may not be entitled. Therefore, IRC § 6331 contains several safeguards. For example:

- A levy extends only to property possessed and obligations existing in an account or due to the taxpayer at the time of the levy. For example, it does not attach to subsequent deposits in an account. 26 U.S.C. § 6331(b); 26 C.F.R. § 301.6331-1.

- A taxpayer is entitled to a thirty-day written notice before a levy is placed on his or his salary or wages. 26 U.S.C. § 6331(d).

- A levy usually cannot be made until the delinquent taxpayer has had at least ten days to pay an assessment.  26 U.S.C. § 6331(a).

- Some types of property are exempt from levy, including some categories of personal property, unemployment benefits, worker's compensation benefits, certain annuity and pension benefits, and child support payments.  26 U.S.C. § 6334

The Internal Revenue Service Restructuring and Reform Act of 1998 (IRSRRA), Pub. Law 105-206, 1998 HR 2676, codified additional safeguards related to tax levies.  As applicable to this case, the congressional enactment of Section 3444 of the IRSRRA, entitled "Codification of Internal Revenue Service Administrative Procedures for Seizure of Taxpayer's Property," is currently set forth as 26 U.S.C. § 6331(j).  Pursuant to § 6331(j), "no levy may be made on any property or right to property which is to be sold under section 6335 until a thorough investigation of the status of such property has been completed," including "a thorough consideration of alternative collection methods." 26 U.S.C. § 6331(j)(2)(D).

Notwithstanding the fact that the IRSRRA did not amend or even mention the statutes related to foreclosure of tax liens, defendant Meisner argues that the IRS should not be allowed to avoid considering "alternative collection methods" by choosing to pursue lien foreclosure rather than levy on her property. However, the plain language of the statute should be the "starting point" in every case involving statutory construction. Berger v. Bishop Inv. Corp., 695 F.2d 302, 310 (8th Cir. 1982). The statutes governing judicial foreclosure actions contain no

18

language stating the IRS must explore alternative collection
methods before instituting a foreclosure action.

Defendant Meisner asserts that the plain language of § 6331
allows an inference that Congress intended to impose exhaustion
of alternative collection methods as a prerequisite or
discretionary consideration in § 7403 foreclosure actions.
However, where Congress includes particular language in one
section of a statutory scheme, but omits it from another section,
it is generally presumed that Congress acted intentionally and
purposely in the disparate inclusion or exclusion.  Hamdan v.
Rumsfeld, 126 S.Ct. 2749, 2765-66 (2006)(citing Russello v. U.S.,
464 U.S. 16, 23 (1983)).  Had Congress chosen to do so, it could
have amended both § 6331 and § 7403 to require exhaustion of
alternative collection methods.  Congress' act of amending §
6331, while failing to amend § 7403, indicates it did not intend
to impose such a requirement in lien foreclosure suits.

"[T]he court may properly consider not only the language of
the statute but also the subject matter, the object to be
accomplished, the purpose to be served, the underlying policies,
the remedy provided, and the consequences of various
interpretations" when ascertaining legislative intent.  Kifer v.
Liberty Mut. Ins. Co., 777 F.2d 1325, 1332 (8th Cir. 1985).
Meisner claims that policy considerations warrant interpreting
§ 7403 to include the exhaustion requirements of § 6331.  She
argues that the IRS should not "be able to circumvent the rights
Congress bestowed on a taxpayer in a levy situation simply by
choosing to proceed to foreclose on a lien in federal district
court."  Filing 95 (Meisner brief), p. 9-10  However, contrary to
her argument, lien foreclosure proceedings and levies do not
provide the taxpayer with the same judicial protection, nor the
IRS with the same fora or remedies for tax collection.  While the

19

court can safeguard the rights of parties in lien foreclosure
proceedings and issue a final determination, administrative
levies are provisional and not performed under court supervision.
These distinctions in purpose, remedies, and judicial oversight
provide a highly plausible explanation for Congress' decision to
enact taxpayer protections for levy proceedings under § 6331 that
were not likewise enacted with regard to lien foreclosure actions
under § 7403.

I conclude the consideration of alternative collection
methods requirement codified in IRC § 6331(j) is inapplicable to
this proceeding under IRC § 7403.

3.   Equitable Defenses to Foreclosure.

Although defendant Meisner argues that district courts have
equitable discretion in § 7403 proceedings, and I should
therefore consider whether the IRS exhausted other options before
filing a foreclosure action, "the limited discretion accorded by
§ 7403 should be exercised rigorously and sparingly, keeping in
mind the Government's paramount interest in prompt and certain
collection of delinquent taxes." U.S. v. Rodgers, 461 U.S. 677,
709 (1983).  To emphasize this point, the Rodgers Court further
stated, "We can think of virtually no circumstances, for example,
in which it would be permissible to refuse to authorize a sale
simply to protect the interests of the delinquent taxpayer
himself or herself." Id.

Defendant Meisner claims she will face unreasonable and
inequitable hardships if removed from her home, especially since
she has mental health problems.  At the outset, I note that "'the
inherent indignity and inequity of being removed from one's home'
does not automatically tip the scales" in Meisner's favor, (U.S.

20

v. Bierbrauer, 936 F.2d 373, 375-6 (8th Cir. 1991)), and there
are no third parties who will be impacted by foreclosing on
defendant's home.[3]  Id.  Defendant Meisner has mental health
problems, (see filing 89, att. 2 (Massey affidavit); filing 96,
att. 1 (Harkins affidavit)), and according to her mental health
counselor, has difficulty handling her own financial affairs.
Filing 89, att 2 (Massey affidavit), ¶ 13.  However, her
correspondence of record to her counsel indicates she is both
coherent and intelligent.  Filing 96, att. 2 (Meisner affidavit),
exs. K, M & N.

     Defendant Meisner lives in a large home with no mortgage
payments, is the sole owner of that residence, and has apparently
no intention of downsizing to a smaller and more affordable
residence or mortgaging her current home to pay all or part of
her tax debt.  Despite receiving an average royalty income
exceeding $150,000 per year for many years, she claims she cannot
obtain credit or pay the bills necessary to maintain or insure
her home, and that it is falling into disrepair.  Assuming this
is true, the home continues to depreciate while in defendant
Meisner's possession and is at risk of being destroyed with no
insurance coverage.  Under such circumstances, the government has
a considerable interest in an expeditious foreclosure of its tax
lien on Meisner's residential property to facilitate the "prompt
and certain collection of delinquent taxes."  U.S. v. Rodgers,
461 U.S. at 709.

     While Section 7403(c) affords the court "limited discretion"
in determining whether to order foreclosure for payment of

---

     [3]The IRS and the State of Nebraska have entered into and
filed a stipulation regarding the respective priorities of their
tax liens for the unpaid income taxes and statutory additions to
tax assessed against defendant Meisner.  Filing 82.

delinquent taxes, the equities in this protracted dispute do not favor Ms. Meisner.  Having considered the undisputed facts of record, I conclude the government's motion for summary judgment should be granted.

IT THEREFORE HEREBY IS ORDERED:

1.   The government's motion to quash, filing 68, is granted.

2.   The plaintiff's motion for summary judgment, filing 86, is granted.

3.   A final judgment shall be entered by separate document.

DATED this 2nd day of May, 2007.

BY THE COURT:

s/ *David L. Piester*

David L. Piester
United States Magistrate Judge

22